*751 OPINION OF THE COURT
Marvin E. Segal, J.
The defendant, The Roman Catholic Church of Our Lady of Loretto, is the owner of the parish premises located at 90-124 Greenwich Street, Hempstead, New York. The parish facilities are comprised of a church, a school, a rectory and a convent building. Since on or about February 1, 1989, the Interfaith Nutrition Network (referred to as The Inn), and the defendant have utilized the former convent building, located on the parish premises, to provide food and temporary shelter to persons in need. The shelter contains 10 beds. Each evening eight persons, referred by the Nassau County Department of Social Services, and other charitable and government agencies, are assigned to this shelter. Those referred are previously screened to eliminate persons with certain psychiatric conditions, and those under the influence of drugs or alcohol. Under the supervision of two volunteers, these eight persons are afforded a place to sleep, an opportunity to shower and are given breakfast. They leave the premises prior to 7:00 a.m. and do not return for two consecutive nights. The Inn currently operates five such shelters in Nassau County. Funding for the shelter is provided, in part, by the Nassau County Department of Social Services, and the balance is met through private donations and the efforts of volunteers.
On April 5, 1990, the Deputy Superintendent of the Building Department of the Incorporated Village of Hempstead, Frank Cico, conducted an inspection of the convent building located at 124 Greenwich Street, Hempstead, New York. He cited the defendant for the following violations: (1) cellar being used for habitable purposes in that 10 people sleep in the cellar at night; (2) gas range, gas clothes dryer and clothes washing machine installed in the cellar without first obtaining a plumbing permit from the Incorporated Village of Hemp-stead. By service of a summons dated July 1, 1991 and verified complaint sworn to on July 1, 1991, the plaintiff commenced an action against the defendant seeking judgment permanently enjoining and restraining the defendant from permitting persons to sleep overnight in the cellar of the subject premises referred to hereinabove as the convent building. By order to show cause returnable July 29, 1991, the plaintiff seeks a preliminary injunction granting the same relief.
Plaintiff’s application is based upon section 78-15 of the Code of the Village of Hempstead which provides, in relevant *752 part, that "no cellar or basement space shall be used as a habitable room or dwelling unit”. Plaintiff asserts that the defendant has admitted to the violation of the Village Code by acknowledging that it allows 10 persons to sleep overnight, every night, in a structure which constitutes a cellar as defined by section 78-1 of the Village Code. The plaintiff, therefore, contends that, as a matter of law, it is entitled to a preliminary injunction enjoining the violation of a local ordinance.
The defendant concedes that a municipality need only demonstrate the commission of a prohibited act in order to establish its entitlement to a preliminary injunction enjoining the violation of a local ordinance. (See, Town of Islip v Clark, 90 AD2d 500.) Relying on sections 1241.1 (a) and 1241.1 (c) of the State Uniform Fire Prevention and Building Code (9 NYCRR) (which has been adopted by the Village of Hempstead), the defendant contends, however, that the plaintiff has not shown that the defendant committed an act in violation of a local ordinance.
Section 78-15 of the Code of the Village of Hempstead prohibits the use of a cellar or basement as a habitable room or dwelling unit. Section 606.3 (87) of the State Uniform Fire Prevention and Building Code defines "habitable space” as a space occupied by one or more persons for living, sleeping, eating or cooking. In its verified answer served on July 22, 1991, the defendant admits paragraph five of the complaint which states that "the convent contains a cellar, more than half of which is below grade and which cellar contains a fuel oil fired furnace, a hot water boiler, and a gas range for cooking.” The defendant, therefore, concedes that the subject premises constitute a cellar and the defendant does not contest the applicability of section 78-15 above, to the physical structure in question herein. Nor does the defendant contest that the subject cellar is being used as a "habitable room or dwelling unit”. The defendant asserts, however, that the use of the subject cellar in the present manner, to provide one-night, temporary shelter for the homeless, is a permissible use under the State Uniform Fire Prevention and Building Code.
The State Uniform Fire Prevention and Building Code was enacted to "provide a minimum level of protection from the hazards of fire, inadequate building construction and improper maintenance in residential and nonresidential buildings, both public and private, so as to establish uniform standards to reduce the threat to the public health and safety for occu *753 pants and users of buildings.” (9 NYCRR 601.1.) Subchapter F of said Code provides the standards governing "the facilities and the condition, use, occupancy and maintenance of residential premises to safeguard the safety, health, and welfare of the occupants and users thereof’ (9 NYCRR 1240.1). Pursuant to the Code, a cellar may not be used as a habitable place. (9 NYCRR 1241.1 [c].) The Code further provides, in section 1241.1 (a), that a kitchen or nonhabitable space may not be used for sleeping purposes. Section 1241.1 (a) does, however, permit public space to be used for temporary shelter. Section 762.2 (b) of the Code provides that public space may be located below ground level.
The defendant argues that the cellar of the subject convent building is a below ground "public space” being used for "temporary shelter”. On this basis, the defendant contends that pursuant to this exception set forth in said Code, it is not in violation of section 78-15 of the Code of the Village of Hempstead, and that the plaintiff is not, therefore, entitled to a preliminary injunction as a matter of law, enjoining the violation of a local ordinance.
The State Uniform Fire Prevention and Building Code does not define the terms "public space” or "temporary shelter”. The plaintiff argues that temporary shelter was intended by the drafters of the Code to permit only short-term use of a public space, such as a school gymnasium, for temporary housing in the event of an emergency or catastrophy. Plaintiff insists that the Code does not permit otherwise nonhabitable space to be utilized to provide short-term shelter for a transient population on a continuous, long-term basis. Plaintiff cites no authority in support of its interpretation of the relevant Code sections, nor has it asserted or shown that any compelling interest of the municipality will be served by such a restrictive interpretation of the Code provisions.
As is set forth hereinabove, the purpose of the Code is to reduce the threat to the public health and safety of occupants and users of buildings by establishing uniform standards for the construction, use, and maintenance of public and private facilities. To this end, the Code generally prohibits the use of nonhabitable spaces, including cellars, for sleeping purposes. Recognizing, however, the State-wide need for temporary shelter, the Code permits the use of a safe but otherwise generally nonhabitable public space, such as a cellar, to be utilized to meet the need for temporary shelter. The crisis of the homeless has unfortunately created an ongoing, continuous need *754 for temporary, overnight shelter in the nature of that provided by the defendant. Based upon the plaintiffs failure to establish a compelling interest limiting the definition of the term "temporary shelter”, the court holds that the permissive use of nonhabitable public space authorized by 9 NYCRR 1241.1 (a) encompasses both short-term use in the event of a community-wide emergency or catastrophy, and continuous, ongoing use to meet the temporary overnight housing needs of individuals in crisis.
Further determinations are required, however, before the court can ascertain whether or not the subject shelter meets the requirements of the temporary shelter exceptions of the Code. Issues of fact exist as to whether or not the cellar of the convent building, owned by the Church, constitutes a "public space”. While the defendant contends that premises are open for use to the public, the plaintiff argues that the facilities are sometimes locked, and that access is restricted to screened individuals. Further, public space in a cellar must meet certain Code standards. For example, 9 NYCRR 735.10 (g) permits public space in a cellar to be utilized only if there are two exits. An issue of fact has been raised herein as to whether a certain ground level window in the subject facility constitutes a second exit. Questions of fact also exist as to the propriety of the main exit to the cellar.
If key facts are in dispute, a request for a preliminary injunction should be denied. (Buegler v Walsh, 111 AD2d 206, appeal dismissed 65 NY2d 609, 1012; Faberge Intl. v Di Pino, 109 AD2d 235; First Natl. Bank v Highland Hardwoods, 98 AD2d 924.) As dispositive facts are clearly contested as set forth above, the court cannot determine, on the basis of the papers submitted, whether or not the defendant is presently in violation of section 78-15 of the Code of the Village of Hempstead.
Absent a showing of the violation of a local ordinance, a municipality is compelled to establish the basic elements prerequisite to the granting of a preliminary injunction. (Incorporated Vil. of Lindenhurst v Retsel Enters., 140 AD2d 521.) The plaintiff must show the likelihood of success on the merits, the danger of irreparable harm in the absence of an injunction, and a balance of the equities in plaintiff’s favor. (Aetna Ins. Co. v Capasso, 75 NY2d 860; Grant Co. v Srogi, 52 NY2d 496.) Confident in its position that it had shown the defendant to be in violation of its local ordinance, the plaintiff did not address these specific elements required to establish its *755 entitlement to a preliminary injunction. The plaintiff does set forth, however, in a general context, its concern for the safety and welfare of those persons sleeping in the subject facility. The plaintiff points out that a stove and furnace are located in the cellar of the convent building, and asserts that the single means of ingress and egress present "a serious immediate threat”.
The safety of the persons sleeping in the shelter is of utmost concern to the court, and any injury suffered by a person seeking temporary housing from the defendant might certainly be irreparable. The defendant counters that the need for the services provided by the shelter is undisputed, and that a preliminary injunction will cause the homeless clients to endure the substantial and immediate risks incident to sleeping on the street. The defendant asserts that the premises are secure and safe. The defendant has installed numerous smoke detectors and fire extinguishers on the premises. A second means of egress and ingress has been created through steps to a ground level window. Two supervisors are present at all times, and the defendant advised the court at a conference held August 1, 1991, that as a further safeguard, one supervisor will hereafter remain awake during the hours that the clients are asleep. The defendant has further agreed to take all steps practicable to rehinge the two doors leading from the cellar so that they may be opened simultaneously.
The defendant points out that the shelter herein was opened with not only the acquiescence, but with the blessing of the prior village administration, over two years ago. The shelter is approved and funded by the Nassau County Department of Social Services. The defendant contends that the 15-month period between the issuance of the citation by the village in April 1990, and the commencement of the instant action, evidences the absence of "a serious immediate threat” sufficient to justify preliminary injunctive relief. Further, the court notes that despite the plaintiff’s assertion that the premises lack proper ingress and egress, thereby creating a fire or other hazard, the village does not seek to enjoin use of the premises, but only seeks to prevent the use of the facility for sleeping purposes on the ground that a local ordinance prohibits sleeping in a cellar.
The plaintiff has failed to show that the defendant’s operation of the subject shelter is a violation of a local ordinance. *756 The plaintiff has further failed to establish that irreparable harm will ensue in the absence of a temporary restraining order, or that the balance of the equities herein lies in plaintiff’s favor. Accordingly, plaintiff’s application for a preliminary injunction is denied.