OPINION OF THE COURT
Kenneth L. Thompson, Jr., J.
Petitioners seek relief in the nature of prohibition barring respondent from preventing any Eugenio Hostos de Maria Community College (hereinafter referred to as Hostos) student *648 scheduled to graduate on June 1, 1997 from participating in the graduation ceremonies and receiving a degree as scheduled on the ground that the student did not pass the CUNY writing assessment test (hereinafter referred to as the CWAT). For the reasons which follow, the petition brought pursuant to CPLR articles 78 and 63 is granted only with respect to those Hostos students graduating as of June 1, 1997.
PROCEDURAL HISTORY
Prior to the signing of an order to show cause, the court conducted a preliminary hearing to determine whether petitioners could establish an entitlement to a temporary restraining order. Upon hearing the parties, this court granted a temporary restraining order prohibiting respondents from preventing any Hostos student scheduled to graduate on June 1, 1997 from participating in the graduation ceremonies or receiving a degree as scheduled because the student did not pass the CWAT exam. The court did so knowing that a degree would not actually be conferred until sometime after the conclusion of the graduation ceremonies.
The petition on the application for preliminary injunction was heard on Friday, June 20, 1997, and Monday, June 23, 1997.
FACTS
The petitioners are Yamile Mendez and Miguel Castillo, both enrolled as students at Hostos. Petitioner Mendez is currently president of the Student Government, a position she has held for approximately one year. Ms. Mendez was not one of the students who was scheduled to graduate on June 1, 1997. Petitioner Castillo is a second-year student, and has attended Hostos for the last 41/2 years, working five hours per week as part of a "work/study” program. He currently works at a fast-food restaurant. Petitioner Mr. Castillo has taken and failed the CWAT four times. However, he maintains a grade point average of 3.42 with a major in public administration, has passed English 1302, and was scheduled to graduate on June 1, 1997 and receive a diploma in August 1997.
Hostos, one of the Community Colleges of the CUNY system, is unique among the CUNY institutions in that it maintains a bilingual educational program while offering extensive remedial education, including remedial English courses, such as English 1300 and 1301. The CWAT examination is a standard English writing assessment test, used as both a placement device *649 and a diagnostic tool with respect to those courses; depending on a student’s performance, the student would be placed in either English 1300 or 1301. Prior to 1996, an Hostos student who had not passed the CWAT examination could not matriculate into English 1302. Since completion of 1302 was required to obtain a degree, a student who had not passed the CWAT was effectively precluded from graduating.
In spring 1996, a group of CUNY educators in the CUNY assessment review report recommended that multiple measures of assessments be used in the assessment of students. Based upon the CUNY assessment review report, in the spring of 1996 the administration of Hostos instituted a series of "waivers” with respect to the CWAT examination for entrance into English 1302. This "waiver” policy was based upon a pilot program in which students who did not pass the CWAT examination were given two intensified courses in English in the morning and two intensified courses of English in the afternoon. The passing of those courses, along with passing the Hostos WAT (hereinafter HWAT) examination, constituted successful completion of the prerequisites for English proficiency required for graduation. The HWAT examination was an examination designed by the English Department to replace the CWAT. This waiver policy was memorialized and disseminated by the faculty and administration of Hostos to the Hostos student body in various documents. The recommendations contained in the CUNY assessment review report in spring of 1996 were never approved or endorsed as policy by the CUNY Board of Trustees.
In the spring of 1996, pursuant to the policy of waivers in the pilot program, students were allowed entrance into English 1302 without passing the CWAT examination. Those students subsequently graduated with degrees from Hostos in the spring of 1996.
On March 18, 1997, the Hostos College-Wide Curriculum Committee voted on the English Department’s request to replace the CWAT with the HWAT. This request was denied. The denial, however, was not a rejection of the use of the HWAT, as the Curriculum Committee explained in a statement issued on March 20,1997. The Committee in fact rejected any single measure of assessment as an exit criterion for English 1300 and English 1301.
On May 27,1997, the CUNY Board of Trustees met to discuss the issue of the CWAT at Hostos. The Trustees were apparently unaware that schools other than Hostos were not employ *650 ing the CWAT as an exit examination. Indeed, the Trustees did not in fact exhibit a clear understanding among themselves as to the function of the CWAT — whether or not it was the Board of Trustees’ policy to use it for placement or for exit purposes, and whether or not the students of every college were expected to pass it. That same day, on the eve of graduation ceremonies scheduled for June 1, 1997, the Board of Trustees passed a resolution requiring a passing grade on the CWAT in order to graduate from a community college. This resolution, whether characterized properly either as a "new” policy or as an adherence to an existent policy from which individual institutions had improperly deviated, effectively denied graduation to numerous students who believed they had met all requirements necessary for graduation. The students, many of whom had not been able to pass the exam, were encouraged to take the test during the week preceding their scheduled graduation date. As noted above, this court found that petitioners had sufficiently established a right to graduate, and permitted them to do so pending final resolution of this action.
CONTENTION OF THE PARTIES
Petitioners contend that the faculty and administration of Hostos led students to believe that the CWAT examination was no longer a requirement for entrance into English 1302. They contend that due to their reliance on these representations, the Board of Trustees is now estopped from requiring passage of the CWAT examination as a requirement to graduate from Hostos; rather the CWAT examination was used essentially for placement and remedial diagnostic purposes. Petitioners further contend that it’s within the power of the faculty and administration to change final exam requirements without the approval of the Board of Trustees of CUNY, and they did so by instituting the "waiver” program.
Respondents contend that passage of the CWAT examination was a de facto requirement for graduation, as students had to pass the CWAT examination for entrance into English 1302, and completion of this course was a requirement of graduation. They argue that while the faculty and administration among themselves at Hostos might be able to change the final exam requirements for a course, only the Board of Trustees could approve changes in prerequisites for a course. The respondents contend that this matter was never approved by the Board of Trustees. Furthermore, respondents contend the replacement of the CWAT by the HWAT was never even ap *651 proved in accordance with Hostos’ own governing procedure, i.e., by vote of the College-Wide Curriculum Committee.
DECISION OF THE COURT
The court is cognizant that only in the rarest instances does the discretion that educators employ in setting standards in higher education ever become an issue which is subject to review by a court of law. (Education Law § 6206 [7], [8]; Matter of Olsson v Board of Higher Educ., 49 NY2d 408; Morales v New York Univ., 83 AD2d 811 [1st Dept], affd on mem below 55 NY2d 822.) However, criteria for the pedagogical evaluation of students of higher education should not be retroactively imposed in haste, nor should such criteria be directed at only one identifiable group of students. Such conduct by educators is arbitrary and capricious, and in the present case must be held to be undertaken in bad faith. That the Board of Trustees acted in an arbitrary manner is evident from the confusion which prevailed at its May 27 meeting on the issue of whether the CWAT was an exit, a placement or a diagnostic examination. The resolution subsequently passed was not based on informed, lucid and cogent deliberative processes. Moreover, the resolution, however neutrally worded, was in fact directed at Hostos, and not the other community colleges in the CUNY system.
In contrast, the pedagogical evaluation process employed by the faculty and administration of Hostos had been ongoing since the spring of 1996. Its raison d’etre, as enunciated in the CUNY assessment review report, was the utilization of multiple measures of assessment. The administration and faculty were so committed to this approach that in March of 1997 the College-Wide Curriculum Committee voted down the English Department’s request to remove the CWAT examination as a prerequisite for English 1302 and replace it with the HWAT examination. The student body of Hostos was at various times since the spring of 1996 informed of the methods by which they would be evaluated, particularly with respect to completion of English 1300 and English 1301, and of the requirements needed to enter English 1302, a course required for graduation.
This court is guided by the decision in Matter of Blank v Board of Higher Educ. (51 Misc 2d 724). In that case, a student took a course of instruction pursuant to the advice of instructors and guidance counselors, only to be denied a diploma based on the dean’s opinion that the student had not complied with *652 the requirements for a diploma. In granting relief, the court stated, "The dean of faculty may not escape the binding effect of the acts of his agents performed within the scope of their apparent authority, and the consequences that must equitably follow therefrom. Having given permission to take the subject courses in the manner prescribed, through his agents * * * he cannot, in the circumstances, later assert that the courses should have been taken in another manner [citations omitted].” (Supra, at 730.) Clearly, the respondents may not now ignore the representations and actions of their "agents”, the faculty and administration of Hostos, upon which the entire student body justifiably relied.
Matter of Blank (supra) was cited with approval in Matter of Olsson v Board of Higher Educ. (49 NY2d 408, 415, supra). In Olsson, the Court refused to award a "diploma by estoppel” where a student was allegedly misled by a misstatement made by one professor, on only one occasion. As the Court stated, "The outstanding feature which differentiates Blank from the instant case is the unavoidable fact that in Blank the student unquestionably had fulfilled the academic requirements for the credential he sought * * * Thus, there could be no public policy objection to Special Term’s decision to award a 'diploma by estoppel’ [citations omitted]” (supra, at 415-416).
The facts here are legally indistinguishable from those in Matter of Blank (supra). Petitioner Miguel Castillo has satisfied the course requirements and prerequisites established by the college which petitioner attended, relying on the stated policy of the school as announced by its duly appointed faculty and administrators. There was clearly reliance on the representations of the Hostos administration, and there exists no basis whereby the student should have fathomed that Hostos was acting beyond its authority.
The obvious unfairness in changing the degree requirements immediately before graduation is manifest. The relationship between student and university is one based on an implied contract. (Matter of Carr v St. John’s Univ., 17 AD2d 632, affd 12 NY2d 802; Matter of Olsson v Board of Higher Educ., 49 NY2d 408, 414, supra.) Clearly, no party to a contract may in good faith unilaterally and materially alter the contract when the other party has substantially performed all of its obligations. Under similar circumstances, it was held that the State University of New York (SUNY) could not unilaterally undertake to cancel the opening of a school of podiatric medicine when it had already contracted with students who *653 were enrolled in the program; the State was estopped from arguing that it was not bound by representations made by SUNY employees (Eden v Board of Trustees, 49 AD2d 277).
The court finds that petitioners have met all the requirements entitling them to preliminary injunctive relief, (1) a likelihood of ultimate success on the merit; (2) irreparable injury absent the granting of the preliminary injunction; and (3) that a balancing of equities favors the petitioners’ position. (See, Aetna Ins. Co. v Capasso, 75 NY2d 860; Bishop v Rubin, 228 AD2d 222 [1st Dept 1996]; County of Orange v Lockey, 111 AD2d 896 [2d Dept 1985].)
This court shall grant petitioners’ motion for a preliminary injunction and order of prohibition. However, the court will require petitioners to post an undertaking of $20,000.
Accordingly, it is ordered that the undertaking is fixed in the sum of $20,000, conditioned that petitioners, if it is finally determined that they were not entitled to an injunction, will pay to the respondents all damages and costs which may be sustained by reason of this injunction; and it is further ordered that respondents, their agents, employees and all other persons acting under the jurisdiction, supervision and/or direction of respondents, are enjoined and prohibited from denying or deferring the granting of degrees to any Hostos student who did not pass the CWAT examination but fulfilled all other requirements for graduation from Hostos for the spring 1997 term.